**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PEREGRINE EMERGING CTA FUND, LLC,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 07 C 5528** |
| **TRADERSOURCE, INC and DAVID WELCH,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant TraderSource, Inc.'s ("TraderSource") and Defendant David Welch's ("Welch") motion to dismiss. For the reasons stated below, we grant the motion to dismiss in its entirety.

## BACKGROUND

Plaintiff Peregrine Emerging CTA Fund, LLC ("Fund") alleges that it is a limited liability company that operates as a commodity pool investing in commodities, options, single stock futures, futures contracts, spot contracts, and

foreign currencies. The Fund alleges that it entered into an agreement with TraderSource and Welch (the president and owner of TraderSource) in which TraderSource agreed to be a "Manager" of the Fund with responsibilities, including selecting and monitoring the advisors who would be trading the Fund's assets, as well as constructing the Fund's portfolios. (Compl. Ex. A § 1.24).

The Fund alleges that Wintech Research, Inc. ("Wintech") was one of the trading advisors that TraderSource had an obligation to monitor. The Fund alleges that TraderSource and Welch became aware in June 2005, that Wintech had agreed to enter trades for the Fund through a third party even though Wintech maintained an existing account to enter trades through another futures commission merchant. The Fund alleges that Wintech's use of two different futures commission merchants materially increased the risk parameters associated with Wintech's trading on behalf of the Fund. The Fund alleges that Defendants' failure to notify the Fund of the increased risk parameters caused by Wintech's use of two futures commission merchants was a breach of their contractual obligations and duties to the Fund. The Fund also alleges that other factors such as the nature of Wintech's trading strategy, Wintech's unfamiliarity with the third party's account trading platform, and stop-loss orders that Defendants were advising Wintech to place, all increased the risk parameters associated with Wintech's trading on behalf of the Fund. Defendants were allegedly aware of the increased risk and failed to notify the Fund.

The Fund alleges that on June 16, 2005 and June 17, 2005, Wintech "lost track" of the open positions and stop-loss orders that it had entered for the Fund and

this error resulted in losses to the Fund of $183,910.63. (Compl. Par 16). The Fund, was allegedly unable to recover any of its losses from Wintech.

The agreement between TraderSource and the Fund was allegedly governed under a Limited Liability Company Operating Agreement ("Operating Agreement") that was attached to the Fund's complaint. Pursuant to the terms of the Operating Agreement, Managers of the Fund such as TraderSource are excluded from liability for all conduct except criminal wrongdoing, fraud, gross negligence, or intentional misconduct ("Exculpatory Provision"). The Operating Agreement also states that Manager Associates such as Welch cannot be held liable for *any* act or omission that is done in the performance of the Manager's duties to the Fund ("Manager Associates Exculpatory Provision").

On September 5, 2007, the Fund filed a three-count complaint in the Illinois state court against TraderSource and Welch and included in the complaint breach of contract claims (Count I), negligence claims (Count II), and breach of fiduciary duty claims (Count III). Defendants subsequently removed the instant action to federal court. Defendants now move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the

plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). Under current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements

merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. Choice of Law

As an initial matter, there is a dispute between the parties regarding the applicable substantive law that should be applied to each claim. The Operating Agreement contains a provision stating that the Operating Agreement "is governed by and to be construed in accordance with the law of Delaware without regard for its conflict of law provisions." (Compl. Ex. A § 34.4).

The Fund argues that Illinois substantive law should be applied to all three counts and should be used to resolve important legal issues such as the definition of "gross negligence," and the issue of whether the Fund has a cause of action for breach of fiduciary duty. The Fund acknowledges that it was organized under the law of Delaware, but states that it is a resident of Illinois and states that all of the alleged conduct and losses occurred in Illinois. The Fund argues that Illinois has the most significant relationship to the cause of action and that under Illinois choice of

law provisions, Illinois law should actually govern substantive legal issues of all three claims. Defendants point to the fact that the Operating Agreement contains an express choice of law provision and, therefore, under Illinois choice of law principles, Delaware substantive law should actually apply to all three claims.

To determine the proper state law to apply "[a] federal court sitting in diversity applies choice-of-law rules of the forum state. . . ." *Smurfit Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004); *see also Klaxton Co. v. Stentor Electrical Manufacturing Co.*, 313 U.S. 487, 497 (1941). With respect to the breach of contract claims in Count I, the issue is whether Illinois or Delaware law should be used to construe the Exculpatory Provision in the contract. Illinois choice of law principles recognize express choice of law provisions when the relationship between the parties is governed under a valid contract. *Smurfit Newsprint Corp.*, 368 F.3d at 949. Under Illinois choice of law, when the intent of the parties is expressed in a governing law provision of the contract, that state's substantive law would apply as intended by the parties. *Id.* The only time that courts would not apply the express choice of law provision would be in an instance "where the express choice of law 'would *both* violate fundamental Illinois public policy *and* [when] Illinois has a materially greater interest in the litigation than the chosen state.'" *Id.* (quoting in part *English Co. v. Northwest Envirocon, Inc.*, 663 N.E.2d 448, 452 (Ill. App. Ct. 1996)(emphasis in original)).

In the instant action, the parties did include an express choice of law provision

in the contract governing their relationship and this provision stated unequivocally that the contract should be "governed" and "construed" under Delaware law. (Compl. Ex. A § 34.4). Other than pointing to the fact that the loss was sustained in Illinois and the actions occurred in Illinois, the Fund has not pointed to anything to show that applying Delaware law would be a violation of fundamental Illinois public policy or that Illinois has a materially greater interest in the litigation than Delaware. The Fund argues that by selecting Illinois as the forum for any action under the contract, the parties were actually agreeing that Illinois substantive law should apply to the contract. However, this interpretation is contrary to the precise language of the contract which clearly identifies Delaware law as the law of choice for any dispute arising under the contract. Therefore, pursuant to the applicable choice of law provisions in this case, the contract will be construed and governed under Delaware law. Substantive legal issues such as the exact definition of "gross negligence" under the contract is likewise governed under Delaware law.

With respect to the negligence claims in Count II, the Fund correctly asserts that Illinois applies a "most significant relationships" approach to choice of law in torts cases and that there is a presumption that the rights and liabilities at issue should be governed under the law of the state where the injury occurred. (Ans. 3); *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, 611 (7th Cir. 1981). However, when tort claims are specifically related to a contractual relationship, Illinois courts place great weight on the location where that contractual

relationship is centered. *See Coats v. Hertz Corp.*, 695 N.E.2d 76, 78 (Ill. App. Ct. 1998)(stating that when a tort claim is based on a contractual relationship, the state law that should apply is the state with the greatest interest in the contractual relationship). In this case, by specifically asserting that Delaware law should apply to the contract, the parties were centering their contractual relationship in the state of Delaware. Therefore, Delaware would have the greatest interest in the contractual relationship between the Fund and Defendants and Delaware substantive law should be applied to Count II.

With respect to the breach of fiduciary duty claims in Count III, a breach of fiduciary duty claim is "governed by the law of the state of incorporation" of the company for which the duty was allegedly breached. *Feldheim v. Sims*, 800 N.E.2d 410, 421 (Ill. App. Ct. 2002). In this case, the Fund alleges a breach of the Defendants' fiduciary duties to the Fund. Thus, the applicable substantive law is the law of the state where the Fund is incorporated, which is Delaware. Therefore, pursuant to choice of law provisions in the state of Illinois, the applicable substantive law for all claims is the law of Delaware.

## II. Claims Against Welch

Counts II and III allege that Welch acted negligently and breached his fiduciary duty to the Fund. Defendants have moved to dismiss the counts against Welch arguing that he is shielded from liability by a contractual clause in the

Operating Agreement and arguing that the Fund has not stated a claim against Welch.

The Operating Agreement, which is attached to the Fund's complaint, contains a clause stating that "[n]otwithstanding any other provision of this Agreement, in no event shall a Manager Associate be personally liable for any act or omission of a Manager in the performance of a Manager's duties to the fund." (Compl. Ex. A § 29.3). The Operating Agreement also contains a "definitions" section which defines a "Manager Associate" as "any officer, director, partner, manager, member, operator, beneficial owner, employee or agent of any manager." (Compl. Ex. A §1.25). There is no dispute between the parties that Welch, as president and owner of TraderSource, qualifies as a "Manager Associate" under the Operating Agreement. Thus, pursuant to the contractual agreement between the parties, Welch is excluded from personal liability for all acts and omissions that fall within the duties of TraderSource to the Fund. The Fund argues that Welch can still be held liable since the Fund has alleged that Welch undertook actions outside the scope of TraderSource's duties to the Fund and since the contract contemplates that Manager Associates may still be held personally liable. We disagree with both contentions.

Pursuant to the allegations made by the Fund in the complaint, Defendants failed to monitor and inform the Fund of increased risk parameters caused by several actions taken by Wintech. The Fund alleges that this failure on the part of Defendants constituted a breach of TraderSource's duty to monitor the Fund's

advisors. The Fund's only allegation made specifically in regard to Welch is that he was president and CEO of TraderSource. On the face of the Fund's complaint, there is nothing to suggest that TraderSource or Welch engaged in some affirmative activity outside the scope of the contract. The Fund attempts to assert that when Wintech contracted with a third party to enter trades on behalf of the Fund, that constituted an action which was outside of the scope of the duties of TraderSource to the Fund. However, the complaint clearly asserts that this was an action taken by Wintech and that TraderSource and certainly Welch did not undertake any action outside of their enumerated duties under the contract that would subject them to a greater degree of liability. The only wrongdoing asserted against Welch relates to TraderSource's failure to carry out its obligations as a Manager of the Fund. Therefore, there is nothing in the complaint to suggest that Welch acted outside the scope of TraderSource's duties to the Fund and he is therefore shielded from liability by the Manager Associates Exculpatory Provision.

The Fund's argument that the Operating Agreement contemplates a circumstance where a Manager Associate could be held personally liable for the actions within the Manager's duties to the Fund also lacks merit. The Fund points to an indemnification clause in the contract which states that the Fund will indemnify Manager Associates from losses unless it is judicially determined that the Manager Associate engaged in "criminal wrongdoing, fraud, gross negligence, or intentional misconduct." (Compl. Ex. A §1.25). The Fund states that this clause evinces an

intent by the parties to allow Manager Associates to be held personally liable for actions within their duties under certain limited circumstances. However, it is clear that the Manager Associates Exculpatory Provision, which excludes personal liability for Manager Associates, trumps the indemnification clause. The Manager Associates Exculpatory Provision excludes Manager Associates from personal liability for all acts within the Manager's duty to the Fund "*[n]otwithstanding any other provision* of [the Operating] Agreement." (Compl. Ex. A § 29.3). Therefore, the Operating Agreement does shield Welch from all personal liability for actions within the scope of TraderSource's duties to the Fund. Since the Fund has not alleged that Welch engaged in any actions outside of the scope of TraderSource's duties to the Fund, all of the claims against Welch fail. Therefore, we grant Defendants' motion to dismiss as to all claims asserted against Welch.

III. Claims Subsumed by the Breach of Contract Claims (Counts II and III)

Based on the same operative facts asserted in the Fund's breach of contract claims (Count I), the Fund had also brought negligence claims (Count II) and breach of fiduciary duty claims (Count III). Defendants have moved to dismiss Counts II and III in their entirety since the alleged wrongdoing that forms the basis for these claims relates to TraderSource's obligations under the contract and thus, under Delaware law, these claims are subsumed by the breach of contract claim. The Fund concedes that all of the claims are based on the same set of operative facts but argues

that one set of operative facts can give rise to more than one cause of action where a defendant's duties to the plaintiff are different in each separate cause of action.

Delaware courts have found that where tort claims, such as in Counts II and III, relate to the obligations between the parties that are expressly set out in a contract governing the parties' relationship, those tort claims should be brought in a breach of contract claim. *Madison Realty Partners 7, LLC v. AG ISA, LLC,* 2001 WL 406268, at *6 (Del. Ch. 2001). Defendants point to the Delaware case of *Madison Realty Partners 7, LLC v. AG ISA, LLC,* to support their argument that the tort claims in this action should be subsumed by the breach of contract claim. 2001 WL 406268, at *6; (Mot. Dis. Mem. 13). In *Madison Realty Partners 7*, the plaintiff brought both a claim for breach of fiduciary duty and a breach of contract claim alleging the same facts for both claims. 2001 WL 406268, at *6. Noting that both claims were brought using the same operative facts, the Delaware court dismissed the claim for breach of fiduciary duty since the breach of contract claim already covered all of the alleged actions by the defendant. *Id.*

In this case, there is no dispute that Counts II and III are based on the same operative facts as the breach of contract claim in Count I. Furthermore, it is clear from the facts alleged in the complaint that all of the alleged wrongdoing by Defendants were related to the contractual duties Defendants owed to the Fund to monitor the advisors of the Fund. The Fund argues that Counts II and III can survive if the duties owed in Counts II and III are different from the duty owed in the breach

of contract claim in Count I. However, both in its complaint and in its answer to Defendants' motion to dismiss, the Fund has not shown that Counts II and III are based on a separate duty owed by Defendants than in Count I. In its answer to the motion to dismiss, the Fund argues that Defendants' obligation to notify the Fund of the increased risk parameters is not a duty that was alleged in Count I. However, Count I of the Fund's complaint clearly "re-alleges" all of the allegations set out in the complaint including its allegations that Defendants failed to notify the Fund of the increased risk parameters. (Compl. Par. 11, 18). Therefore, the Fund's argument that the duty to notify the Fund of increased risk parameters was not an element of the claim in Count I is contrary to the plain language of the Fund's own complaint. The Fund has not pointed to anything else that might establish that Counts II and III are based on separate duties owed by Defendants to the Fund. Therefore, pursuant to Delaware law, all allegations of wrongdoing by Defendants that are related to the Operating Agreement must be brought in a breach of contract claim. Therefore, we grant Defendants' motion to dismiss Count II and Count III in their entirety.

IV. Claims Precluded by the Exculpatory Provision (All Counts)

Defendants have also moved to dismiss all three counts on the basis of the fact that Defendants are precluded from liability for all of the conduct alleged in the Fund's complaint as a result of the Operating Agreement's main Exculpatory Provision. Defendants argue that the Exculpatory Provision in the contract precludes

any claim that is based on mere negligence and that the Fund did not adequately allege that Defendants have committed criminal wrongdoing, fraud, gross negligence, or intentional conduct. We agree.

Both parties agree that the Exculpatory Provision in the Operating Agreement is valid and enforceable in this action. When there is an exculpatory provision in a contract, a plaintiff can only state a claim if it pleads "non-exempt conduct" by the defendant. *In re Abbott Labs Derivative S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003). Such non-exempt conduct should be pled with "sufficient particularity to permit the court to reasonably conclude that the [defendant's] conduct falls outside of the exemption." *Id.* Thus, the Fund cannot plead a claim by alleging mere negligence, but must allege with sufficient particularity that Defendants committed one of the non-exempted acts stated in the Exculpatory Provision, namely criminal wrongdoing, fraud, gross negligence, or intentional conduct.

In its response to Defendants' motion to dismiss, the Fund argues that its complaint has alleged with sufficient particularity that Defendants committed "gross negligence" in their failure to monitor Wintech's trading strategy and thus breached the contract, notwithstanding the Exculpatory Provision. The Fund has not argued that its complaint has properly alleged any of the other non-exempted conduct by Defendants, including criminal wrongdoing, fraud, or intentional conduct. Thus, the issue with respect to all counts is whether the Fund has properly alleged operative facts upon which a claim for gross negligence could be based. *Kyle*, 144 F.3d at 454-

55; *Lucien*, 967 F.2d at 1168.

If we construe the allegations of the complaint in the light most favorable to the Fund, as we must at this stage in the litigation, Defendants were under an obligation to monitor Wintech, one of the advisors who was trading the Fund's assets. Defendants subsequently received notice that Wintech had contracted with a third party to enter trades for the Fund and Defendants knew or should have known that this arrangement materially increased the risk parameters associated with Wintech's trades on behalf of the Fund. Defendants were also aware of the overall risky trading strategy that was employed by Wintech. Finally, Defendants failed to inform the fund of the increased risk parameters or appropriately monitor these risk parameters. The Fund has alleged these facts as a basis for all three of its claims.

The Fund has not suggested anywhere in its complaint that the wrongful conduct by Defendants constituted gross negligence. While the Fund is not required under the notice pleading standard to specifically state that Defendants' actions constituted gross negligence, the Fund was under an obligation to outline with particularity in its complaint its claim of gross negligence. *Higgs*, 286 F.3d at 439; *Kyle*, 144 F.3d at 455; *Abbott Labs*, 325 F.3d at 810. Delaware state law employs a strict definition of gross negligence. Under Delaware law, "[a]n allegation of gross negligence requires a showing of negligence that 'is a higher level of negligence representing an extreme departure from the ordinary standard of care.'" *Hughes ex rel. Hughes v. Christina School Dist.*, 2008 WL 73710, at *4 (Del. Super.

2008)(quoting in part *Brown v. Robb*, 583 A.2d 949, 953 (Del. 1990). In the corporate context, Delaware courts have found that to show gross negligence a plaintiff must prove that the defendant acted with a "devil-may-care attitude or indifference to duty amounting to recklessness." *Albert v. Alex. Brown Mgmt. Srvs., Inc.*, 2005 WL 2130607, at *4 (Del. Ch. 2005)(citation and internal quotation marks omitted).

In this case, the Fund is required by Delaware law to allege that Defendants were "'recklessly uninformed' or acted 'outside the bounds of reason.'" *Id.* (quoting in part *Tomczak v. Morton Thiokol, Inc.*, 1990 WL 42607, at *12 (Del. Ch. 1990)). None of the facts or conclusions alleged in the Fund's complaint come close to an allegation that Defendants committed gross negligence under the strict definition employed by Delaware state courts. The allegations by the Fund amount to a simple negligence claim and fail to so much as outline a basis for a claim of gross negligence. The argument that the Fund has alleged negligence and not gross negligence is buoyed by the fact that in Count II the Fund merely asserts a claim for simple negligence. In Count II, the fund states that based on the alleged facts "the Defendants acted negligently." (Compl. Par. 26). There is no reference in the entire complaint that would so much as indicate that Defendants exhibited the kind of "reckless indifference" that would give rise to a claim of gross negligence under Delaware law. *Tomczak*, 1990 WL 42607, at *12.

The Fund argues that gross negligence is an inherently factual issue and as

such, regardless of the pleadings in its complaint, there is no basis to dismiss its complaint as a matter of law. Under the Fund's theory, there would never be a basis for a court to dismiss a claim based upon gross negligence no matter how little notice the complaint gives to the defendant, so long as the plaintiff alleges some act that the plaintiff claims to be wrong or negligent. Such a theory flies in the face of Seventh Circuit precedent which requires plaintiffs to plead with "specific particularity" all conduct falling outside the scope of an applicable contractual exculpatory provision. *Abbott Labs*, 325 F.3d at 810.

The Fund further argues that given the volatile nature of the industry in which the Fund and Defendants conducted business, even small actions that would ordinarily constitute simple negligence, could rise to the level of gross negligence. Regardless of the accuracy of that statement, the Fund was still required to provide Defendants with "'at least minimal notice of the claim,'" which in this case was gross negligence. *Kyle*, 144 F.3d at 455 (quoting *Jackson*, 66 F.3d at 153-54). Taking into consideration the strict legal definition of gross negligence employed by Delaware law, the Fund has failed to place Defendants on notice of its claim that Defendants had in fact acted with gross negligence and had thus breached the Operating Agreement, notwithstanding the Exculpatory Provision. Even if we accept all factual allegations in the complaint as true, the Fund has failed to allege that Defendants engaged in any conduct that has not been exempted by the Exculpatory Provision in the Operating Agreement. Thus, in addition to failing to state claims for

negligence or breach of fiduciary duty, due to the provisions of the Exculpatory Provision, the Fund has failed to state a claim for breach of contract. Therefore, we grant Defendants' motion to dismiss in its entirety.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 19, 2008